UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NEWTOWN, INC.,

    Plaintiff,

  v.

TOP HEAVY CLOTHING COMPANY, INC.,

    Defendant.

Case No. C05-967L

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for partial summary judgment (Dkt. #18) filed by plaintiff Newtown, Inc. ("Newtown"). Newtown requests summary judgment on its claim that defendant Top Heavy Clothing Company, Inc. ("Top Heavy") breached the parties' contract by accepting delivery of Newtown's products but paying only a portion of the amount due.

For the reasons set forth in this order, the Court denies the motion.

## II. DISCUSSION

**A.**     **Background**.

Newtown is an importer of men's clothing. Top Heavy is a clothing wholesaler that sells

clothing to various retailers. The parties had a business relationship beginning in 1991. This lawsuit concerns Newtown's importation of fleece sweatshirts in 2004 for Top Heavy.

In February 2004, Top Heavy ordered thousands of fleece sweatshirts from Newtown to be delivered in the summer and early fall. The orders include purchase orders 3438 and 3469, which are the subject of this lawsuit. As was the parties' practice, the purchase orders were drafted initially with what the parties refer to as "placeholders," or initial prices. Both parties understood that those prices could increase later to reflect embroidery charges and certain design changes.

On May 24, 2004, William Wong, the President of Newtown, sent an e-mail to Tadd Chilcott, the President of Top Heavy, requesting that Top Heavy agree to price increases for the orders. Affidavit of William Wong (Dkt. #19) ("Wong Decl.") at Ex. E. In the e-mail, Mr. Wong explained, "I am planning to ship all of your Fall merchandise with China quota. . . . I need your help to pay for the cost of the China quota, right now." Id. The e-mail includes a chart with the price increases. At the end of the message, Mr. Wong stated, "Sorry for the inconvenience. I will call you both to discuss." Id. Mr. Chilcott was surprised by Mr. Wong's e-mail for two reasons: (1) it implied that the price increase was based on an unexpected need to ship the goods from China, whereas Mr. Wong had told him from the beginning that Newtown would procure the goods from China, and (2) Top Heavy had already committed to contracts with its own customers in reliance on the original prices and delivery dates. Declaration of Tadd Chilcott (Dkt. #22) ("Chilcott Decl.") at ¶ 14. Mr. Chilcott responded by e-mail stating, "William – you know that we must have these goods and that everything we have discussed is a problem. . . . Please ship these goods on time. Neither of us are going to make any money this year." Id. at Ex. 3. Mr. Chilcott and Mr. Wong subsequently discussed the proposed price increases by telephone. Mr. Chilcott informed Mr. Wong that he could not agree to the increases because of Top Heavy's commitments to its customers, and that they "would have to

work this out at the end of the year, as [they] had done in 2003." Id. at ¶ 16.

On June 17, 2004, Mr. Wong sent Mr. Chilcott an e-mail pleading extreme financial distress and requesting an advance of $500,000 as a "one time favor." Chilcott Decl. at Ex. 5. Between June 22 and August 2, 2004, Mr. Chilcott wired $1 million in three separate transfers.

Newtown's shipments were delivered to Top Heavy between September 20, 2004 and October 18, 2004. Newtown also sent to Top Heavy invoices for each shipment; the invoices contained prices higher than those in the purchase orders. Because the shipments were delayed, Top Heavy did not deliver the goods on time to its customers. As a result of the late deliveries of the fall season fleece, JC Penney assessed $150,000 in "chargebacks" against Top Heavy. JC Penney also ceased purchasing fleece from Top Heavy.

In January 2005, Mr. Chilcott and Mr. Wong met, as they had previously, to settle Top Heavy's account for the prior year. Mr. Wong claimed that Top Heavy owed Newtown $328,488.60. Mr. Chilcott was "not sure" that Top Heavy owed Newtown anything given the "disastrous" prior year. Chilcott Decl. at ¶ 40. Ultimately, the parties agreed that Top Heavy would pay $164,244.30, half the amount requested by Newtown. Newtown believed that the payment was a partial payment, and the rest was forthcoming. Top Heavy believed that the parties agreed to "split the baby," and that the payment represented an agreed settlement for the 2004 season. Id. Top Heavy's check contained the notation "payment in full for balance of fleece in 2004." Id. at Ex. 14. Newtown cashed the check.

Newtown filed its complaint in this Court on May 26, 2005 alleging claims for breach of contract, "action on an open account," and promissory estoppel. Top Heavy filed a counterclaim for breach of contract, alleging among other things that Newtown's late deliveries resulted in Top Heavy's loss of several retail accounts. This Court's jurisdiction is based on the diversity of the parties.

**B.      Applicable Legal Standards.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.      Analysis.**

It is undisputed that the parties had a binding contract. They dispute, however, whether they modified the price term by subsequent oral agreement and whether they agreed to an accord and satisfaction of the amount owed.

Newtown, as the party asserting that a modification occurred, has the burden of proving the existence of the contract, defendant's breach, and damages. See, e.g., Costco Wholesale Corp. v. World Wide Licensing Corp., 78 Wn. App. 637, 644 (1995). Newtown argues that the prices in its invoices reflect an agreed upon oral modification of the prices in the purchase orders. In support, Newtown relies heavily on cases holding that a subsequent modification need not be in writing if the original contract satisfies the statute of frauds. That argument, however, does not establish the existence of a modification. "The absence of a statute of frauds defense does not, however, prove or disprove the *existence* or *terms* of a contract, nor does absence of the defense alter the plaintiff's burden." Id. (emphasis in original); see also C.I.F. Productions, Inc. v. Burlington Coat Factory, 881 F. Supp. 104, 106-07 (S.D.N.Y. 1995) ("'The burden of persuading the trier of fact that a [modification] was in fact made orally prior to the written confirmation is unaffected'") (quoting Comment 3 to UCC § 2-201). Newtown also

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 4                -4-

argues that because Top Heavy accepted the goods, it is bound to pay the contract price for them. That argument begs the question of the amount of the contract price.

Newtown contends that Mr. Chilcott expressly agreed to the price modification during a meeting, then Mr. Wong "confirmed" the agreement with his May 24, 2004 e-mail. Wong Decl. at Ex. E. The e-mail, however, is not worded as a confirmation. Instead, it appears to be an initial request for a higher price based on the need to pay the China quota. Although Mr. Chilcott anticipated price increases based on design changes, he did not anticipate or agree to increases based on the China quota. He asserts that Mr. Wong told him from the beginning that the goods would be produced in China, and the original prices reflected that assumption. Furthermore, Mr. Wong's "confirmation" e-mail stated that he would call Mr. Chilcott to discuss the proposal. According to Mr. Chilcott, when they spoke, he refused to agree to the increase.

Newtown also argues that Top Heavy's course of conduct, including paying some of the invoices and accepting the goods, shows that it agreed to pay the higher prices. Top Heavy, however, did not pay the disputed invoices. Rather, it advanced substantial funds to Newtown *before* it received the invoices or the goods. Although Newtown relies on the fact that its invoices contained the notation, "Remark: Price Revision Per Discussion with Tadd," that remark does not reflect an *agreement* to pay the higher prices.

The fact that Top Heavy retained and resold the goods without objecting to the invoices is Newtown's strongest evidence of an agreement to the higher prices. Top Heavy, however, has presented evidence that it accepted the goods under pressure. It was too late to obtain the goods from another supplier, and its customers were relying on Top Heavy to supply the goods. Furthermore, Mr. Chilcott informed Mr. Wong that the parties "would have to work this out at the end of the year," as they had done after the 2003 season. Chilcott Decl. at ¶ 16. Also, Top Heavy asserts that the prices in the invoices are even higher than those set forth in Mr. Wong's May 24, 2004 e-mail; Newtown has not explained the discrepancy. All of these factors show

ORDER DENYING MOTION FOR
PARTIAL SUMMARY JUDGMENT - 5                      -5-

that genuine issues of material fact exist regarding whether the parties agreed to a subsequent oral modification of the price term, and if so, the amount of the increase.

Even if the parties had agreed to the higher prices, an additional issue would preclude summary judgment. Top Heavy argues that Newtown agreed in January 2005 to accept a lower amount to resolve the matter. Top Heavy argues that the agreement is reflected by the fact that Newtown cashed its check containing the notation, "payment in full for balance of fleece in 2004." Chilcott Decl. at Ex. 14. Newtown disputes that the parties ever reached that agreement. Accordingly, a material issue of fact exists regarding whether the parties had a binding agreement to resolve the dispute in 2005.

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES Newtown's motion for partial summary judgment. (Dkt. #18).

DATED this 15th day of March, 2006.

*/s/ Robert S. Lasnik*

Robert S. Lasnik
United States District Judge